IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| DIA SMILEY, DO, | : | |
| | : | CIVIL ACTION FILE NO. |
| Plaintiff, | : | _____ |
| | : | |
| vs. | : | **Jury Trial Demanded** |
| | : | |
| TANNER MEDICAL CENTER, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

Dia Smiley DO ("Plaintiff" or "Dr. Smiley"), by undersigned counsel, for her Complaint against Tanner Medical Center, Inc. ("Defendant" or "TMC"), shows as follows:

## INTRODUCTION AND SUMMARY

1.

This is an action for discrimination on the basis of gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, the Equal Pay Act, 29 U.S.C. § 206(d) and the Lilly Ledbetter Fair Pay Act of 2009 (Pub.L. 111-2, S. 181). Plaintiff also asserts supplemental state law claims.

## JURISDICTION AND VENUE

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3.

Jurisdiction and venue are proper in the Northern District of Georgia, Newnan Division, because TMC is located and conducts business in this District and Division and because the conduct complained of herein took place within this District and Division.

## PARTIES

4.

Plaintiff Dia A. Smiley, DO is female. Dr. Smiley is a resident and citizen of the State of Georgia.

5.

Defendant is a Georgia corporation. Defendant is an "employer" within the meaning of Title VII.

6.

Defendant may be served via Rule 4, Fed. R. Civ. P., by personal service upon its registered agent for service of process, Carol Crews, 705 Dixie Street, Carrollton, Georgia 30117.

## ADMINISTRATIVE REMEDIES

7.

On October 31, 2019, Plaintiff filed a Charge of Discrimination (the "Charge") with the United States Equal Employment Opportunity Commission ("EEOC").

8.

The EEOC issued to Plaintiff a notice of her right to sue, attached hereto as **Exhibit A**, and Plaintiff timely filed this action.

9.

Plaintiff brings this action within the time allowed by law to assert each cause of action specified herein.

10.

Plaintiff properly and timely exhausted all available administrative remedies as required by law with regard to the Charge and otherwise. All other conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

11.

Defendant is a nonprofit hospital system that comprises five hospitals and numerous clinics and physician practice groups.

12.

Defendant is based in Carrollton, Georgia, and employs more than 3,500 employees, serving a nine-county area in West Georgia and East Alabama.

13.

Defendant's employment of Plaintiff began on or about November 15, 2016.

14.

Defendant employed Plaintiff at its wholly owned and operated medical practice known as "TMG Tanner Heart and Vascular Specialists," located at 705 Dixie Street, Suite 401, Carrollton, Carroll County, Georgia 30117 (the "Practice").

15.

Defendant employed Plaintiff as a cardiologist in the Practice pursuant to a Professional Services Agreement ("PSA") with Plaintiff to provide professional services for the Practice.

16.

Under the PSA, Defendant made certain promises and representations to Plaintiff and agreed to financially compensate and provide certain benefits to Plaintiff for her services in the Practice.

17.

By virtue of the PSA, Defendant and Dr. Smiley were contractually bound to follow Defendant's written Equal Employment Opportunity Policy (the "Tanner EEOC Policy"), which states in relevant part as follows:

> Tanner health System is committed to provide equal employment opportunity for all qualified individuals without regard to race, color, sex, age, national origin, citizenship, sexual orientation, gender identity or expression, disability status, protected veteran status, genetics, or any other characteristic protected by the federal, state, or local laws. . .
> ***
> Harassment, retaliation, coercion, interference, or intimidation based on race, color, religion, sex, age, national origin, citizenship, sexual orientation, gender identity or expression, disability status, protected veteran status, or genetics is prohibited and any employee who experiences such interferences should report I immediately to his/her supervisor or the Human Resources Department without action or retribution or retaliation.

18.

By virtue of the PSA, Defendant and Dr. Smiley were contractually bound to follow Defendant's Anti Harassment Policy (the "Anti-Harassment Policy") and a Behavior that Undermines the Culture of Safety Policy (the "Safety Policy"), which is intended, according to Defendant, to foster employee reporting of allegations of harassment to their supervisor, Human Resources, and any Administrative Officer, the President/CEO, or the Tanner Compliance Hotline.

19.

The Anti-Harassment Policy promises that "[i]f any employee feels that he/she is being harassed in any way by another individual . . . he/she should make these feelings known to his/her supervisor immediately. The matter will be thoroughly investigated, and where appropriate, disciplinary action will be taken. . . . No employee will be penalized in any way (no retaliation or retribution) for reporting such conduct concerning himself/herself or any other person."

20.

At all relevant times, Plaintiff was fully qualified for her employment by Defendant.

21.

Plaintiff performed all essential job duties in compliance with the PSA and applicable legal and professional standards.

22.

On May 22, 2019, Defendant notified Dr. Smiley that it was terminating her employment "without cause pursuant to section 6.4 [of the PSA]" by providing Dr. Smiley "ninety (90) days prior written notice."

23.

Plaintiff's employment ended seventy-nine days later, on August 9, 2019.

24.

According to the Defendant, the decision makers in the termination of Dr. Smiley's employment were Bill Hines, Defendant's Executive Vice President, Susan Fox, Defendant's Senior Vice President of Tanner Medical Group, and Dr. Shazib Khawaja, Defendant's Chief of Cardiology and Interventional Cardiologist.

25.

At all times relevant, Plaintiff was the only female physician employed by Defendant at the Practice in its cardiology department.

26.

At all times relevant, Plaintiff worked in the Practice among numerous male physician employees, with a male department chief, Dr. Khawaja, who served as her immediate supervisor.

27.

After an initial time of acclimation to the Practice and her new position and properly performing her job duties, Plaintiff noticed Defendant treated her differently than her male counterparts.  Plaintiff ultimately realized that Defendant's supervisory and professional staff treated Plaintiff differently because of her sex.

28.

Discriminatory, harassing, and retaliatory acts against Plaintiff, based on her gender, by Defendant's supervisory and professional staff, began to impair

Plaintiff's ability to perform her duties under the PSA. Such practices and obstacles resulted from an apparent gender bias and were not similarly imposed upon Plaintiff's male professional counterparts.

29.

Defendant discriminated, harassed, and retaliated against Plaintiff based on her gender in various ways, including the following acts and omissions:

(i)     Defendant treated Plaintiff differently and less favorably than it treated male physician employees, including paying Plaintiff lower compensation than Defendant's male physician employees with similar or less clinical productivity than Plaintiff.

(ii)    Defendant treated Plaintiff differently and less favorably than its male physician employees by reducing her annual salary by approximately $45,000 after her first year of employment. Defendant did not similarly reduce the salary of a male physician employee hired after Plaintiff, who was less productive than Plaintiff based on Defendant's RVU compensation scheme.

(iii)   Defendant treated Plaintiff differently and less favorably than its male physician employees by increasing and modifying her job duties without additional compensation, including the following examples:

a. During September 2018, Dr. Timothy Albert indicated that he was not going to take on any more call coverage responsibilities after December 2018. Defendant thereafter failed to secure a *locum tenens* physician to cover the call vacancy that resulted from Dr. Albert's decision. Defendant required Plaintiff to cover additional call responsibility for a period of months, yet her male counterpart physicians were not required to share in such call coverage. Defendant's imposition upon Plaintiff of additional call responsibility was so frequent during said time period that it impaired Plaintiff's ability to properly perform all of her responsibilities, including completion of her notes.

b. Defendant pressured Plaintiff to schedule a greater number of new and regular patient encounters on her regular administrative work days than it required of her male counterparts, despite the fact that Defendant had required Plaintiff for many months to assume a greater on-call work commitment than any of Defendant's male physician employees in the same department.

(iv) Defendant treated Plaintiff differently and less favorably than its male physician employees by disregarding Plaintiff's suggestions and concerns, due to her gender, and, on some occasions, falsely accusing Plaintiff of

misconduct and subjecting her to heightened discipline as compared with her male colleagues.  For example:

a.  Plaintiff brought to Defendant's attention that certain issues and problems in its administrative and billing process impaired her ability to efficiently perform her responsibilities under the PSA, such as administrative billing tasks. Plaintiff informed Defendant that when Plaintiff had her medical notes signed, Defendant's billers were not billing codes on time, because (due, apparently, to IT issues) codes were apparently not observed by the billers. Various adverse documentation issues resulted from this set of circumstances, caused by deficiencies in Defendant's billing process and not by Plaintiff.  Instead of taking Plaintiff's concerns seriously and timely and properly resolving the issue, Defendant treated Dr. Smiley as though she had failed to timely complete documentation required for patient care and billing and falsely claimed that Plaintiff's alleged "failure to timely document patient care and billing as significant when compared to her peers," all of whom were male.

b.  On repeated occasions during group meetings, Plaintiff raised what she believed in good faith were helpful suggestions relating to productivity, quality assurance and patient safety, yet her suggestions were ignored.

In an operations meeting in February 2019, Plaintiff brought to the attention of Dr. Khawaja and all other attendees that PET stress test imaging is a serious potential liability if done without having a radiologist read the non-cardiac portion of the test. Additionally, Dr. Smiley raised the issue that, in her professional opinion, cardiologists should not do stress tests on weekends because of the amount of time involved, and she objected to the Defendant's failure to provide nurse practitioners to do the stress tests on the weekends. In response to Plaintiff's voicing these concerns, Dr. Khawaja shrugged and rolled his eyes in a disrespectful manner and flatly ignored Plaintiff's concerns. The incident was embarrassing, sexist and disrespectful, and Plaintiff never observed him treat male cardiologists in such a disrespectful manner.

c.   During another meeting with Dr. Khawaja, Dr. Khawaja instructed Plaintiff that he desired that she see more patients and, to accomplish that, she should ignore certain "medicine stuff, like thyroid and anemia labs." Plaintiff responded to this suggestion by expressing her concern in good faith that she did not feel comfortable with that clinical approach because those things related, in her clinical judgment, to the heart and therefore were necessary to her ability to render a proper and

safe diagnosis. Dr. Khawaja disregarded Plaintiff's concern and treated her in a hostile and unfriendly way, unlike the manner with which he treated Plaintiff's male counterparts.

d.  During a meeting with Dr. Khawaja in May 2018, a female cardiologist with another group was leaving that opportunity, and Plaintiff and her colleagues were asked if they wanted that female cardiologist to join the Practice. Dr. Khawaja, as the Chief, responded that he had reservations because she was a single mother and that would adversely affect her work.

(v)  Defendant treated Plaintiff differently and less favorably than its male physician employees by failing and refusing to provide Plaintiff with clinical support staff, yet Defendant provided numerous clinical support employees to its male physician employees in Plaintiff's department. Plaintiff made numerous requests to increase her staff support, including:

a.  During October 2017, Plaintiff communicated to Defendant that she desired to see more patients but that she needed another nurse, medical assistant and a scribe, like her male counterparts in the Practice were provided, to assist her to achieve greater productivity in patient encounters.  Defendant was dismissive of Plaintiff's request.

b.  On another occasion, Plaintiff requested of Defendant that Plaintiff be provided more help in the clinic because her one nurse was unable due to the press of her workload to take a lunch break and at times became exhausted, potentially compromising her ability to do her job properly and safely.  Defendant failed to take any action to address Plaintiff's concerns.

(vi)  Defendant treated Plaintiff differently and less favorably than her male physician colleagues by, contrary to the requirements of the PSA, failing to incorporate Plaintiff into the practice and marketing materials.  For example, Defendant omitted the name of Plaintiff from the practice referral, physician change and prescription forms and delayed the placement of her name on in-office directory signage for one-and-one-half years after her hire date. Defendant added the names of its male physician employees to these materials in a timely manner after their hire dates. Defendant also declined to assist Plaintiff in obtaining her Georgia license, but it assisted its male physician employees in obtaining their Georgia licenses.

(vii)  Defendant treated Plaintiff differently and less favorably than its male physician employees by contacting Plaintiff repeatedly during her scheduled vacation time for her honeymoon to pressure her to record notes

in patient medical records remotely, despite the fact that Defendant's electronic medical records system did not allow for remote international submissions.

(viii)  Defendant treated Plaintiff differently and less favorably than its male physician employees by allowing its employees to bully, harass, and intimidate Plaintiff because of her sex, as detailed above.

(ix)  Defendant treated Plaintiff differently and less favorably than its male physician employees by failing to follow its own policy to address complaints regarding Defendant's employees' lack of professionalism and harassment towards Plaintiff, which impacted patient clinical care.

(x)  Defendant's discriminatory, harassing, and retaliatory behavior resulted in Defendant terminating Plaintiff's employment.

30.

During the course of her employment, Plaintiff informally and formally submitted verbal and written complaints of Defendant's gender-based discriminatory and harassing acts and omissions. Defendant responded by taking adverse actions against Plaintiff in reprisal.  For example,

(i)  In April 2018, Plaintiff told Susan Fox, Defendant's Vice President, that Defendant's decision to reduce her salary was unfair and based on

requirements not imposed on her male colleagues at her stage of employment.

(ii)      During 2018, Plaintiff communicated to Tim Albert MD, a cardiologist with Tanner Heart & Vascular and CMO of TMC, her requests for (i) reasonable use of a scribe to enable to her to more efficiently see and care for more patients in a safe and productive manner to assist her in meeting all billing and documentation requirements, as was routinely done by male cardiologists in the Practice to facilitate their productivity; and (ii) additional time (30 minutes instead of 15 minutes per patient) to allow her sufficient time to properly finish notes following each patient in counter to ensure safe healthcare and proper documentation.

(iii)     During April 2019, additional work demands upon Plaintiff caused her to suffer from exhaustion, further impairing her ability to fulfill her professional responsibilities. Plaintiff's male counterparts in the Practice were not subject to the same treatment, and Plaintiff voiced her objection to her supervisor, Dr. Khawaja, that Plaintiff was not treated the same as her male counterparts.

(iv)      On September 14, 2018, Plaintiff reported to Defendant workplace bullying, harassment and gender discrimination by a male colleague,

Dr. Bradley White, and included in her report specific examples of his unprofessional and condescending behavior in the workplace directed to her based upon what she believed in good faith to gender bias and discrimination against her. Dr. Smiley provided her report of such bullying and discrimination to Defendant by following what she understood to be Defendant's required reporting process for such activities, that is, she sent her letter (hereafter the "Complaint Letter") containing the report to Defendant's Professional Peer Review Committee, via a link on Defendant's website. The Complaint Letter provided as follows:

Bradley White PPRC complaint letter

To Whom It May Concern:
I am reporting the unprofessional behavior with this physician, that has been ongoing for almost 2 years, but has reached tremendous depth today. This physician has shouted at me, and has been rude and unprofessional multiple times in the past. I did not know how to report him before, and now I know the process and he is very well overdue. I will start with the event that happened today. We have a mutual patient, and I have saved the Perfect serve exchange which was very on professional on his part.

BW: Hi Dia, just checking to see if Mrs. – was on the cath schedule for today?  Thank you.
Me (replied right away): No, we need to consult GI. Her hemoglobin continues to drop.
BW:?  She is administrating and she has no external signs symptoms of GI blood loss, endoscopy seems to be low yield, if you think it is necessary, I will call them.

Me: She has a history of anal fissure which bleeds sometimes, and history of diverticulosis, last colonoscopy in the VA to 3 years ago and had polyps. They should be consulted because interventionalist needs to know if she needs a stent, is she having bleeding. And then we can put her on Plavix over the weekend and see if she bleeds further.

BW: Your sarcasm is unprofessional; I'll give you today, but I will not tolerate again. If you would like to meet with Dr. Arant and Dr. Camp I can arrange that.

Me: I am not sarcastic; I explained the problem.

This was the end of the exchange and then I called him because obviously I was very puzzled and startled, to why he thought I was being sarcastic.

I called him and explained to him that I'm never sarcastic, especially when it comes to medical care.  Further I want to know why he thought so. He said that the tone of the text, and when I asked him what he meant. He said maybe especially when I said that we will put her on Plavix and see if she bleeds over the weekend, was sarcastic. I told him that that was not true. I do put patients on antiplatelets before LHC if patients are anemic to see if they have further bleeding and when we are able to stop the antiplatelets prior to stenting. I told him that this is a miscommunication, and if he thought so he should have called me and clarified the presumption. I also told him that he is implying that I have been sarcastic before, and he changed the subject.  He changed the subject and he said that he'll give me a chance. I felt like he got scared because he knew he was out of line. He then denied everything and stated that he'll give me a chance, even though I didn't care about getting a chance, because I did not do anything wrong.

This part of a string of behaviors, that have been getting worse and worse over 2 years.  In the first 1 or 2 months I started here, he called me and shouted at me because he did not see a plan in the Villa Rica notes, and I was very confused. He lectured me about documentation and stated how in the 20 years he was internist and I can get in trouble for not documenting. I was confused because we had documented, every day either as an addendum to the nurse practitioner note, or a separate note. I then pointed out to him that the addendum will always show up on that did document, and a document But not the notes necessarily. He then realized that most notes actually had addendum and did not apologize, and I was very confused by his behavior.

I have noticed this bullying behavior has gotten worse and worse. I have heard from others that he was making fun of me and another female cardiologist when she was here and says something to the effect " how did I get so lucky to be on call with both of the female cardiologists (by name) on the weekend sarcastically, and states that it was going to be a bad weekend." I have heard him say professional things about other physicians in the hallway to nurses on the floor. However, I do think this is a gender discrimination issue and he just does not like female doctors. . . .

(v)     Having not received any response to the Complaint Letter, Plaintiff resubmitted her complaint by email to Michelle Moye of Defendant's Human Resources Office, on August 9, 2019.

31.

According to Defendant's representations in its May 22, 2019 letter, which provided ninety days' notice of termination, Defendant intended to continue employing Dr. Smiley at least through August 20, 2019.  Dr. Smiley's last day of employment was August 9, 2019.

## COUNT I

**(Discrimination and Harassment Based on Sex
Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.)**

32.

The above-stated allegations are incorporated herein by reference

33.

Defendant was Plaintiff's "employer" as that term is defined at 42 U.S.C. § 2000e(b).

34.

Plaintiff was Defendant's "employee" as that term is defined at 42 U.S.C. § 2000e(f).

35.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") prohibits discrimination in employment based on sex.

36.

By the acts, practices, and omissions alleged in detail above, Defendant engaged in unlawful discrimination under Title VII based on Plaintiff's sex (female). Defendant took adverse employment actions against Plaintiff because of her sex, including paying Plaintiff less than her male colleagues, reducing Plaintiff's pay, increasing and modifying her job duties, falsely accusing Plaintiff of misconduct, subjecting Plaintiff to heightened and/or disproportionate discipline, subjecting Plaintiff to harassment and bullying by supervisors and staff, and terminating Plaintiff's employment.   Plaintiff's male counterparts were not treated in this fashion.

37.

In addition, Defendant treated Plaintiff differently than her male colleagues by failing to provide Plaintiff sufficient resources and staff as compared with her male counterparts, failing to fully integrate Plaintiff into the Practice and its marketing as Defendant did for Plaintiff's male colleagues, and contacting her while on vacation on her honeymoon demanding she submit paperwork.

38.

Defendant treated Plaintiff differently because of her sex as evidenced by the fact that Defendant did not take similar adverse and harassing actions against Plaintiff's male colleagues. For instance, when Defendant cut Plaintiff's salary, Defendant did not cut the salary of Dr. Chelif Junor, who is male.  Dr. Junor was a newly hired male doctor who was paid higher compensation by Defendant than Plaintiff was paid.  Defendant also more effectively incorporated into the Practice all of Plaintiff's male colleagues and assisted each in obtaining their Georgia licenses than it did with respect to Plaintiff.  Defendant provided more support staff and resources to all of Plaintiff's male colleagues that it did for Plaintiff.

39.

Dr. Khawaja, Plaintiff's supervisor, evidenced gender bias by statements to Plaintiff and others that were derogatory towards females, including his comment during the May 2018 meeting expressing concerns about hiring a single mother.  Dr.

Khawaja consistently ignored Plaintiff's suggestions and concerns, but not those of Plaintiff's male colleagues, even rolling his eyes when Plaintiff raised concerns during the February 2019 operations meeting.   Dr. Bradley White also made derogatory and sexist comments to Plaintiff and others.

40.

The above-described acts by Defendant constitute harassment based on Plaintiff's sex and created a hostile work environment for Plaintiff.  The harassment and hostile work environment had a detrimental effect on Plaintiff's ability to perform her job duties and adversely impacted terms and conditions of Plaintiff's employment.

41.

Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

42.

At the time of the above-described conduct, Plaintiff believed her work environment to be hostile or abusive, and she informed Defendant of her belief in this regard.

43.

Defendant failed to take prompt, remedial action to stop the above-described harassment and hostile environment.

44.

Although Plaintiff promptly informed her supervisors of the above-described harassment, Defendant never responded with corrective action. Defendant thus failed to follow its own anti-harassment policy to prevent and remedy the harassment against Plaintiff and hostile work environment.

45.

Defendant discriminated against Plaintiff based on her gender and thereby violated 42 U.S.C. § 2000e-2(a) by, among other wrongful patterns and acts, subjecting her to sexual harassment so severe and pervasive so as to alter the conditions and terms of her employment and then failing to act and condoning or tolerating such harassment; by compensating her less favorably than her male counterparts; by subjecting her to other less favorable terms and conditions or employment, including the imposition of heightened and/or disproportionate discipline on Plaintiff; and, ultimately, by terminating Plaintiff's employment.

46.

Defendant has provided reasons for its adverse employment actions against Plaintiff that are pretextual and false.

47.

As a result of Defendant's actions, Plaintiff suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and she is entitled to general and special damages, and economic damages including front and back pay.

48.

In unlawfully discriminating against and harassing Plaintiff, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, supporting the imposition of exemplary damages.

49.

Plaintiff is entitled to recover from Defendant attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT II

### (Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.)

50.

The above-stated allegations are incorporated herein by reference.

51.

Title VII, 42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any

individual[] . . . because [s]he has opposed any practice many an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."

52.

Plaintiff engaged in protected activity under Title VII on multiple occasions, as alleged above. Among other such activity, Plaintiff opposed Defendant's unlawful employment practices under Title VII by submitting verbal and written complaints to her superiors about sex discrimination, harassment, retaliation and other unlawful employment practices she experienced in her job.

53.

Plaintiff reasonably believed Defendant engaged in unlawful employment practices when, for example, Defendant: (i) paid Plaintiff less than her male counterparts were paid and reduced her pay when her male counterparts' pay was not reduced, (ii) increased and adversely modified Plaintiff's job duties in a manner not done to her male counterparts, (iii) falsely accused Plaintiff of misconduct and/or poor performance without similar treatment of male counterparts, (iv) failed to provide Plaintiff sufficient resources and staff as compared with her male counterparts, (v) subjected Plaintiff to heightened and/or disproportionate discipline as compared to her male counterparts, (vi) repeatedly contacted Plaintiff during her

scheduled vacation time without similar treatment of her male colleagues, (vii) failed to provide Plaintiff sufficient support staff and resources to allow Plaintiff to perform her work duties, unlike the support staff experienced by her male counterparts; (viii) failed to incorporate Plaintiff into the Practice's marketing as done for male employees; (ix) subjected Plaintiff to harassment and bullying because of her sex; (x) failed to take corrective action to prevent Plaintiff from being subjected to further gender-based harassment; and (xi) retaliated against Plaintiff for opposing Defendant's unlawful employment practices.

54.

Plaintiff's opposition and complaints regarding Defendant's unlawful employment practices were protected activities within the meaning of 42 U.S.C. § 2000e, *et seq*.

55.

Defendant unlawfully retaliated against Plaintiff for engaging in such protected activity under Title VII, by materially adverse employment actions against Plaintiff that would dissuade a reasonable employee from making or supporting a charge of discrimination.   After each time Plaintiff opposed Defendant's unlawful employment practices, Defendant increasingly altered the terms and conditions of her employment and took other materially adverse employment actions against Plaintiff as alleged herein.

56.

A causal connection exists between Plaintiff's protected activities and Defendant's unlawful retaliation.

57.

As a result of Defendant's retaliatory conduct, Plaintiff suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience.  Further, each paycheck Plaintiff received reflected a discriminatory decision by Defendant and, because it was less than the amount payable had Defendant adhered to a nondiscriminatory compensation scheme, constituted cognizable harm.  Plaintiff is entitled to general and special damages, and economic damages including front and back pay.

58.

In unlawfully discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, supporting the imposition of exemplary damages.

59.

Plaintiff is entitled to recover from Defendant attorneys' fees and costs pursuant to 42  U.S.C. § 2000e-5(k).

## COUNT II

### (Violations of Equal Pay Act)

60.

The above-stated allegations are incorporated herein by reference.

61.

Defendant employed Plaintiff for purposes of the EPA, 29 U.S.C. § 203(d).

62.

Defendant is subject to this private action pursuant to 29 U.S.C. § 216(d).

63.

At all times relevant to this action, Plaintiff was performing work substantially equal to that of her male counterparts, the performance of which required substantially equal skill, effort, and responsibility as the jobs held by members of the opposite sex.  Plaintiff performed her job under similar working conditions. Plaintiff was paid less than members of the opposite sex.

64.

Defendant compensated Plaintiff less for her work that it compensated her male counterparts for comparable work.

65.

Defendant violated the EPA by paying Plaintiff, a female, woman less than a man to perform the same or substantially similar job.

66.

Defendant's violations of the EPA were knowing, willful, and intentional.

67.

At the time of the discriminatory compensation complained of herein, Defendant knew or should have known that its actions constituted violations of the EPA.

68.

At a minimum, Defendant's actions in paying Plaintiff less than similarly situated male physicians were reckless.

69.

As a direct and proximate result of Defendant's actions, Plaintiff has been denied equal pay as that given to male employees of equal rank. Plaintiff is entitled to back pay and liquidated damages for Defendant's willful violations of the EPA, and her attorneys' fees and costs, in amounts to be proved at trial.

## COUNT III

### (Breach of Contract)

70.

The above-stated allegations are incorporated herein by reference.

71.

Defendant breached the PSA by, among other things:

(a) failing to compensate Plaintiff as required by the PSA, Section 2;

(b) failing to ensure proper billing for professional services performed by Dr. Smiley, as required by the PSA, Section 2.6;

(c) failing to assist Dr. Smiley in marketing her professional services;

(d) failing to initiate a plan to promote and advertise Dr. Smiley's practice to the public, as required by the PSA's Addendum A, Section III. C.

(e) failing to follow the Anti-Harassment Policy, the Tanner EEOC Policy and the Safety Policy.

(f) by each act and omission described herein that violated federal law.

72.

Plaintiff is entitled based on Defendant's breaches of the PSA to recover all damages such as arise naturally and according to the usual course of things from

such breach and such as the parties contemplated, as determined by the jury in an amount to be proven at trial, plus interest thereon.

73.

Based on Defendant's breaches of the PSA, Plaintiff is entitled to recover her attorney's fees and litigation expenses from Defendant pursuant to the PSA Section 10.13.

## PRAYER FOR RELIEF

WHEREFORE, Based on the allegations set forth in this Complaint, Plaintiff respectfully requests:

(a) a declaratory judgment that Defendant violated Title VII and the EPA and breached the PSA;

(b) a determination that Defendant's violations of Title VII and the EPA were willful;

(c) a money judgment against Defendant based upon the evidence presented at trial, including:

(i)      back pay,

(ii)     front pay,

(iii)    compensatory damages,

(iv)     punitive damages,

(v)      liquidated damages,

(vi)      reasonable costs and attorney fees, and

(vii)     prejudgment interest.

(d) reinstatement to her former position and seniority with Defendant and an injunction barring further unlawful acts by the Defendant;

(e) such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues triable by a jury.

Dated: October 29, 2020

HAMIL LITTLE PC

*/s/ Kevin S. Little*
Kevin S. Little
Georgia Bar No. 454225
Caitlin Lentz
Georgia Bar No. 648687
1450 Greene Street, Suite 3600
Augusta, Georgia 30901
(706/722-7886)
kevin@hamillittle.com

*Counsel for Plaintiff*

**Exhibit A**
p. 1 of 3

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

---

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

---

| | |
|---|---|
| To:  **Dia A. Smiley**<br>      **390 17th Street, N.W., Unit 2063**<br>      **Atlanta, GA 30363** | From:  **Atlanta District Office**<br>        **100 Alabama Street, S.W.**<br>        **Suite 4R30**<br>        **Atlanta, GA 30303** |

☐  *On behalf of person(s) aggrieved whose identity is*
   *CONFIDENTIAL (29 CFR §1601.7(a))*

---

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **410-2020-00993** | **Claudia Mortimer-Kanu,**<br>**Investigator** | **(404) 562-6877** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

| | |
|---|---|
| **X** | More than 180 days have passed since the filing of this charge. |
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| **X** | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| ☐ | The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost. |
| ☐ | The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Stephen T. Weber*   For                                                  September 9, 2020

Enclosures(s)

**Darrell E. Graham,**                                                  *(Date Mailed)*
**District Director**

cc:

| | |
|---|---|
| **Shari Gainey**<br>**Director of Human Resources**<br>**TANNER MEDICAL CENTER**<br>**109 Cedar Street**<br>**Carrollton, GA 30117** | **Kevin Little**<br>**HAMIL LITTLE HEALTHCARE LAW**<br>**Four Seasons Building**<br>**75 14th Street, N.W., Suite 2840-B**<br>**Atlanta, GA 30309** |

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:     **Timothy R. Newton**
        **Constangy, Brooks, Smith & Prophete LLP**
        **Suite 2400**
        **230 Peachtree Street**
        **Atlanta, GA 30303**

# CIVIL COVER SHEET

JS44 (Rev. 10/2020 NDGA)

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

Dia Smiley, DO

## DEFENDANT(S)

Tanner Medical Center, Inc.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** ___Fulton County___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Carroll County___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

Kevin S. Little, kevin@hamillittle.com
Caitlin V. Lentz, caitlin@hamillittle.com
Hamil Little, 1450 Greene Street, Suite 3600, Augusta, GA 30901 (706) 722-7886

**ATTORNEYS** (IF KNOWN)

Timothy R. Newton,
tnewton@constangy.com
Constangy, Brooks, Smith & Prophete, LLP,
230 Peachtree Street, N.W., Suite 2400, Atlanta, GA 30303
(404) 525-8622

## II. BASIS OF JURISDICTION
(PLACE AN "X" ONE BOX ONLY)

☐ 1 U.S. GOVERNMENT PLAINTIFF
☐ 2 U.S. GOVERNMENT DEFENDANT
☒ 3 FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)
☐ 4 DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

|  | PLF | DEF |  | PLF | DEF |  |
|---|---|---|---|---|---|---|
| | ☐ 1 | ☐ 1 | CITIZEN OF THIS STATE | ☐ 4 | ☐ 4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| | ☐ 2 | ☐ 2 | CITIZEN OF ANOTHER STATE | ☐ 5 | ☐ 5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| | ☐ 3 | ☐ 3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | ☐ 6 | ☐ 6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 ORIGINAL PROCEEDING
☐ 2 REMOVED FROM STATE COURT
☐ 3 REMANDED FROM APPELLATE COURT
☐ 4 REINSTATED OR REOPENED
☐ 5 TRANSFERRED FROM ANOTHER DISTRICT (Specify District)
☐ 6 MULTIDISTRICT LITIGATION - TRANSFER
☐ 7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGE JUDGMENT

☐ 8 MULTIDISTRICT LITIGATION - DIRECT FILE

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Defendant violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) by treating Plaintiff adversely because of her sex and retaliating against her because she opposed Defendant's unlawful employment practices. Defendant violated the Equal Pay Act (29 U.S.C. 206) by paying Plaintiff less than her male colleagues for performing substantially equal work. Defendant also violated supplemental state law claims.

**(IF COMPLEX, CHECK REASON BELOW)**

☐ 1. Unusually large number of parties.
☐ 2. Unusually large number of claims or defenses.
☐ 3. Factual issues are exceptionally complex
☐ 4. Greater than normal volume of evidence.
☐ 5. Extended discovery period is needed.
☐ 6. Problems locating or preserving evidence
☐ 7. Pending parallel investigations or actions by government.
☐ 8. Multiple use of experts.
☐ 9. Need for discovery outside United States boundaries.
☐ 10. Existence of highly technical issues and proof.

---

### CONTINUED ON REVERSE

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT $_____   APPLYING IFP _____   MAG. JUDGE (IFP) _____

JUDGE _____   MAG. JUDGE _____ (Referral)   NATURE OF SUIT _____   CAUSE OF ACTION _____

## VI. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

CONTRACT - "0" MONTHS DISCOVERY TRACK
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

CONTRACT - "4" MONTHS DISCOVERY TRACK
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 151 MEDICARE ACT
- [ ] 160 STOCKHOLDERS' SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

REAL PROPERTY - "4" MONTHS DISCOVERY TRACK
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY
- [ ] 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- [ ] 365 PERSONAL INJURY - PRODUCT LIABILITY
- [ ] 367 PERSONAL INJURY - HEALTH CARE/ PHARMACEUTICAL PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

BANKRUPTCY - "0" MONTHS DISCOVERY TRACK
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK
- [ ] 440 OTHER CIVIL RIGHTS
- [ ] 441 VOTING
- [x] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 445 AMERICANS with DISABILITIES - Employment
- [ ] 446 AMERICANS with DISABILITIES - Other
- [ ] 448 EDUCATION

IMMIGRATION - "0" MONTHS DISCOVERY TRACK
- [ ] 462 NATURALIZATION APPLICATION
- [ ] 465 OTHER IMMIGRATION ACTIONS

PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK
- [ ] 463 HABEAS CORPUS- Alien Detainee
- [ ] 510 MOTIONS TO VACATE SENTENCE
- [ ] 530 HABEAS CORPUS
- [ ] 535 HABEAS CORPUS DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS - Filed Pro se
- [ ] 555 PRISON CONDITION(S) - Filed Pro se
- [ ] 560 CIVIL DETAINEE: CONDITIONS OF CONFINEMENT

PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK
- [ ] 550 CIVIL RIGHTS - Filed by Counsel
- [ ] 555 PRISON CONDITION(S) - Filed by Counsel

FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 690 OTHER

LABOR - "4" MONTHS DISCOVERY TRACK
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT. RELATIONS
- [ ] 740 RAILWAY LABOR ACT
- [ ] 751 FAMILY and MEDICAL LEAVE ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL. RET. INC. SECURITY ACT

PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK
- [ ] 820 COPYRIGHTS
- [ ] 840 TRADEMARK
- [ ] 880 DEFEND TRADE SECRETS ACT OF 2016 (DTSA)

PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK
- [ ] 830 PATENT
- [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATIONS (ANDA) - a/k/a Hatch-Waxman cases

SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK
- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK
- [ ] 870 TAXES (U.S. Plaintiff or Defendant)
- [ ] 871 IRS - THIRD PARTY 26 USC 7609

OTHER STATUTES - "4" MONTHS DISCOVERY TRACK
- [ ] 375 FALSE CLAIMS ACT
- [ ] 376 Qui Tam  31 USC 3729(a)
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 430 BANKS AND BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC.
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- [ ] 480 CONSUMER CREDIT
- [ ] 485 TELEPHONE CONSUMER PROTECTION ACT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 890 OTHER STATUTORY ACTIONS
- [ ] 891 AGRICULTURAL ACTS
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 895 FREEDOM OF INFORMATION ACT 899
- [ ] 899 ADMINISTRATIVE PROCEDURES ACT / REVIEW OR APPEAL OF AGENCY DECISION
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES

OTHER STATUTES - "8" MONTHS DISCOVERY TRACK
- [ ] 410 ANTITRUST
- [ ] 850 SECURITIES / COMMODITIES / EXCHANGE

OTHER STATUTES - "0" MONTHS DISCOVERY TRACK
- [ ] 896 ARBITRATION (Confirm / Vacate / Order / Modify)

\* PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23    DEMAND $_____

JURY DEMAND [x] YES [ ] NO (CHECK YES ONLY IF DEMANDED IN COMPLAINT)

## VIII. RELATED/REFILED CASE(S) IF ANY
JUDGE_____   DOCKET NO._____

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES: (CHECK APPROPRIATE BOX)
- [ ] 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 2. SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 4. APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- [ ] 5. REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- [ ] 6. COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):

- [ ] 7. EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO._____ , WHICH WAS DISMISSED. This case [ ] IS [ ] IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

SIGNATURE OF ATTORNEY OF RECORD          DATE   10/29/20